IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

**CASH FLOW RESOURCES, L.L.C.** **PLAINTIFF**

v. CIVIL ACTION NO. 2:11-CV-190-KS-MTP

**HARD ROCK SPECIALIZED, L.L.C., et al.** **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

For the reasons stated below, the Court awards Plaintiff $42,259.50 in attorney's fees and $253,557.02 in punitive damages, for which all Defendants are jointly and severally liable.

### I. BACKGROUND

The Court discussed the factual background of this case in its Memorandum Opinion and Order [48] of November 15, 2012. The Court granted Plaintiff's Motion for Default Judgment [42] with respect to Plaintiff's breach of contract and open account claims as to all named Defendants, and it found that Plaintiff is entitled to $126,778.51 in compensatory damages. The Court also found that Plaintiff is entitled to pre-judgment interest at the rate of eight percent per annum, calculated according to the actuarial method, from the date the debts were initially due until the entry of judgment, and that Plaintiff is entitled to post-judgment interest at the rate prescribed by 28 U.S.C. § 1961, running from the entry of judgment until the date the debts are paid in full. Finally, the Court held that an award of attorney's fees and punitive damages is appropriate, and it ordered Plaintiff to provide an accounting of attorney's

fees incurred thus far and a brief on the subject of punitive damages. Plaintiff complied, and the Court may now enter a final award and judgment.

## II. ATTORNEY'S FEES

As the Court already noted, a "person who prevails in a suit for payment on an open account is entitled to reasonable attorney's fees." *T. Jackson Lyons & Assocs., P. A. v. Precious T. Martin, Sr. & Assocs., PLLC*, 87 So. 3d 444, 454 (Miss. 2012); *see also* MISS. CODE ANN. § 11-53-81. In collection matters, Mississippi courts have traditionally found that attorney's fees equal to one-third of the indebtedness are presumptively reasonable. *Franklin Collection Servs. v. Stewart*, 863 So. 2d 925, 927 (Miss. 2003); *Cox v. Howard, Weil, Labouisse, Friedrichs, Inc.*, 619 So. 2d 908, 915 (Miss. 1993).[1] The following factors may affect the presumption:

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

---

[1] In the past, the Mississippi Supreme Court limited this presumption of reasonableness to sums of $5,000.00 or less. *See Dynasteel Corp. v. Aztec Indus., Inc.*, 611 So. 2d 977, 986 (Miss. 1992). The Mississippi Court of Appeals continues to do so. *See Gulf City Seafoods, Inc. v. Oriental Foods, Inc.*, 986 So. 2d 974, 980 (Miss. Ct. App. 2007); *Cavagnaro v. Coldwell Banker Alfonso Realty, Inc.*, 995 So. 2d 754, 766 (Miss. Ct. App. 2008). However, more recent Mississippi Supreme Court opinions omit the $5,000.00 limit, despite concerning fee requests and awards of greater than $5,000.00. See *Par Indus. v. Target Container Co.*, 708 So. 2d 44, 54 (Miss. 1998) ($67,156.49 fees award received benefit of presumption); *Allen v. Mac Tools, Inc.*, 671 So. 2d 636, 644-45 (Miss. 1996) ($9,584.05 award – after $38,336.21 request – received benefit of presumption); *Cox*, 619 So. 2d at 915 (contingent fee of one-third of indebtedness is standard in collection practice and presumptively reasonable "where the amount involved is small enough so that the fee derived cannot be classified as outrageous"). Therefore, the Court questions the continued applicability of the $5,000.00 limit. Regardless, the record before the Court is sufficient to support the fee award granted herein.

- (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

- (3) The fee customarily charged in the locality for similar legal services;

- (4) The amount involved and the results obtained;

- (5) The time limitations imposed by the client or by the circumstances;

- (6) The nature and length of the professional relationship with the client;

- (7) The experience, reputation and ability of the lawyer or lawyers performing the services; and

- (8) Whether the fee is fixed or contingent.

*Allen*, 671 So. 2d at 644.

Plaintiff demands attorney's fees equal to thirty-five percent of the compensatory damages award – $44,372.48. Plaintiff hired its counsel on a contingency basis [53-1], agreeing to pay 25% of all sums received in a settlement prior to trial and 35% of all sums received after the commencement of trial. The Court's judgment does not fit either category, as this case was neither settled nor tried. Rather, the Court entered a default judgment in Plaintiff's favor. Therefore, the outcome was more favorable to Plaintiff than a settlement would have been, but it required considerably less work of Plantiff's counsel than a trial would have.

Additionally, the invoice from Plaintiff's counsel [56] only reflects $23,809.99 of fees and costs accrued through November 29, 2012. Plaintiff argues that Defendants' failure to respond to this litigation indicates that it will likely accrue additional fees

in collecting on the Court's judgment. The Mississippi Supreme Court has held that the potential difficulty of collecting on a judgment may justify an otherwise excessive award of attorney's fees, *Dynasteel*, 611 So. 2d at 987, and the Court agrees that Plaintiff will likely face additional costs in collecting on the judgment.

The Court believes a middle ground – between the contract's 25% and 35% contingency rates – is appropriate. Therefore, the Court awards Plaintiff $42,259.50 in attorney's fees, an amount equal to one-third of Defendant's indebtedness. A one-third contingency fee is standard in collection practice, *Cox*, 619 So. 2d at 915, and while the invoices provided by Plaintiff's counsel only demonstrate $23,809.99 of fees and costs, the Court believes that a higher award would not be unreasonable, in light of the probable difficulty in collecting on the judgment. *See Dynasteel*, 611 So. 2d at 987.

### III. PUNITIVE DAMAGES

Plaintiff requests punitive damages equal to twice its compensatory damages – or $253,557.02. When determining the amount of punitive damages, the Court considers the following factors, if relevant:

> [T]he defendant's financial condition and net worth; the nature and reprehensibility of the defendant's wrongdoing, for example, the impact of the defendant's conduct on the plaintiff, or the relationship of the defendant to the plaintiff; the defendant's awareness of the amount of harm being caused and the defendant's motivation in causing such harm; the duration of the defendant's misconduct and whether the defendant attempted to conceal such misconduct; and any other circumstances shown by the evidence that bear on determining a proper amount of punitive damages.

MISS. CODE ANN. § 11-1-65(1)(e). "[T]he primary purpose of punitive damages is to

4

punish the wrongdoer and deter similar misconduct in the future by the defendant and others . . . ." *Id.* Before entering an award of punitive damages, the Court "shall ascertain that the award is reasonable in its amount and rationally related to the purpose to punish what occurred giving rise to the award and to deter its repetition by the defendant and others." MISS. CODE ANN. § 11-1-65(1)(f)(i). However, "no hard and fast rule exists" for determining the maximum punitive damages award that "may be made in any particular case." *Sessums v. Northtown Limousines*, 664 So. 2d 164, 169 (Miss. 1995).

Defendant Lee Marcus Roberts is the principal of each corporate Defendant. He uses the companies interchangeably and commingles their funds. Before Hard Rock Specialized was dissolved, Roberts transferred its assets to Hard Rock Heavy Haul, LLC and Hard Rock Trucking, LLC, intentionally undercapitalizing it so that he could avoid paying its creditors. Although Roberts promised Plaintiff that he would use certain funds to pay what his company owed, he later admitted that he used them to pay the start-up costs for another project. By intentionally committing these actions, Roberts – through the corporate Defendants – frustrated Plaintiff's contractual expectations. He made fraudulent representations to Plaintiff and fraudulently transferred Hard Rock Specialized's assets in an effort to avoid debt collection, escape contractual liability, and deprive Plaintiff of the benefit of its bargain.

In the Court's opinion, an award of punitive damages equal to twice Plaintiff's compensatory damages is reasonable. Such an award would deter similar conduct in the future – whether by Defendants or other persons. Furthermore, Defendant Roberts

was aware of the harm his actions caused to Plaintiff, and the only apparent motivation for his actions was to avoid debt collection and deprive Plaintiff of its contractual rights. Accordingly, the Court awards Plaintiff $253,557.02 in punitive damages.[2]

### IV. CONCLUSION

For the reasons stated above, the Court awards Plaintiff $42,259.50 in attorney's fees and $253,557.02 in punitive damages, for which all Defendants are jointly and severally liable.

SO ORDERED AND ADJUDGED this 7th day of January, 2013.

*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE

---

[2]*See Id.* at 170 (court affirmed punitive damages award of $100,000 on compensatory damages award of $5,253.50 where used car dealer manipulated odometer and engaged in a series of misrepresentations over the course of a year); *Polk v. Sexton*, 613 So. 2d 841, 845 (Miss. 1993) (where defendant breached a provision of a contract by lying so that he could sell the subject property for greater profit, punitive damages of $50,000 – on compensatory damages of $30,000 – was appropriate); *Griffith v. Griffith*, 997 So. 2d 218, 224 (Miss. Ct. App. 2008) (in dispute between co-owners of business, award of punitive damages almost twice the amount of compensatory damages was appropriate because defendant used corporate funds for his personal expenses and other businesses).